# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

KENSLEY GAUER,

        Plaintiff,

    v.                                Case No.  18-C-515

ANDREW SAUL,
Commissioner of Social Security,

        Defendant.

---

## DECISION AND ORDER

---

Plaintiff Kensley Gauer filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.  The Commissioner's decision was issued following a stipulated remand from this court and subsequent hearing before an administrative law judge (ALJ), which took place on January 3, 2018.  R. 655, 769.  Gauer challenges the ALJ's decision on several grounds, including that the ALJ erroneously rejected the opinions of her treating psychiatrist, Dr. Gerald Bannasch, and counselor, Sarah Binder, and failed to adequately account for her moderate limitations in concentration, persistence, or pace (CPP) in formulating the question to the vocational expert (VE).  For the reasons that follow, the Commissioner's decision will be affirmed.

## BACKGROUND

On May 15, 2012, Gauer filed an application for DIB and SSI, claiming disability beginning on January 1, 2008, due to mood disorder, conduct disorder, anxiety, and attention deficit

hyperactivity disorder (ADHD).  R. 222, 229.  She was 19 years old at the time.  Her claims were denied initially on October 24, 2012, and upon reconsideration on May 15, 2013.  R. 21. Gauer then requested and received a hearing before an ALJ, who issued a decision denying her claims on February 27, 2015.  R. 21–31.  Gauer petitioned for judicial review, but before any decision was entered by this court, the parties filed a joint motion to remand the case back to the Social Security Administration (SSA) with directions that the ALJ proceed through the sequential evaluation process and issue a new decision.  R. 769–71.  ALJ  Guila Parker held a video hearing on January 3, 2018, during which Gauer, who was represented by counsel, and a VE testified.  R. 655, 680.

At the time of the hearing, Gauer was 25 years old, lived in a house with her parents, and was working at Arby's part-time up to 30 hours per week, a job she started a year prior, in January 2017.  R. 685–87.  In 2011, Gauer worked a seasonal position doing warehouse work, a month at a time, but she was fired after the first week of her third stint due to cursing at the manager. R. 687–89, 1043.  She also described her past work as a janitor cleaning office buildings, which required her to be on her feet all shift and occasionally lift 20 to 35 pounds.  R. 690.  She also previously worked part-time for 20 to 25 hours per week as a caregiver.  R. 690–91.  Gauer testified that she did not believe she had the mental capacity to handle full-time hours and that she suffers from 15- to 30-minute panic attacks, which become more frequent when she works in excess of 30 hours per week.  R. 691–92.  Though she does not miss work, Gauer testified she is late to work every day.  R. 697–98.  She also testified that she sometimes neglects hygiene, i.e., skips showering, brushing teeth or flossing, because of a lack of motivation.  R. 698–99.

In a fifteen-page written decision dated January 29, 2018, the ALJ concluded that Gauer was not disabled.  R. 655–70.  Following the SSA's five-step sequential evaluation process, the ALJ

concluded at step one that Gauer had not engaged in substantial gainful activity since January 1, 2008, the alleged onset date. R. 658. At step two, the ALJ found that Gauer had the following severe impairments: depression; ADHD, post-traumatic stress disorder (PTSD); anxiety; conduct disorder; borderline personality disorder; and polysubstance abuse (marijuana and alcohol). *Id.* At step three, the ALJ found that Gauer's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 659. After consideration of the whole record, the ALJ concluded that Gauer has the RFC

> to perform a full range of work at all exertional levels, but is limited to understanding, remembering, and carrying out simple instructions in an environment involving only occasional work-related decisions and occasional changes in the work setting. The claimant can tolerate occasional interaction with supervisors, co-workers, and the public, but should not be required to perform tandem tasks that require coordination with coworkers. The individual can work at a consistent pace throughout the workday, but not at a production rate pace where each task must be completed within a strict time deadline.

R. 661. The ALJ determined at step four that Gauer is capable of performing past relevant work as a janitor. R. 668. In addition, the ALJ made alternative findings at step five that there are other jobs in the national economy that Gauer can perform, including stock clerk/order filler, housekeeper, and building cleaning worker. R. 669. Based on these findings, the ALJ concluded that Gauer was not disabled within the meaning of the Social Security Act. R. 669–70. The ALJ's decision became final after the Appeals Council did not review the case.

## LEGAL STANDARD

The question before the court is not whether it agrees with the Commissioner's conclusion that the plaintiff is not disabled. Judicial review of the decisions of administrative agencies is

3

intended to be deferential. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Supreme Court recently reaffirmed that "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Beistek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The phrase 'substantial evidence,'" the Court explained, "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Id.* "And whatever the meaning of 'substantial' in other contexts," the Court noted, "the threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence is "'more than a mere scintilla.' . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229).

"Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citing *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Given this standard, and because a reviewing court may not substitute its judgment for that of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v.*

*Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

Gauer first challenges the ALJ's decision to give little weight to the opinion of Dr. Bannasch, her treating psychiatrist. Though the current regulation is otherwise, under the regulations applicable to Gauer's application, the ALJ must give a treating source's medical opinion on the nature and severity of the claimant's impairments "controlling weight" if the opinion "is well-supported by the medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in . . . [the] record." 20 C.F.R. § 404.1527(c)(2); SSR 96–2p. At the same time, "a claimant is not entitled to disability benefits simply because her physician states that she is 'disabled' or unable to work." *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). The Seventh Circuit has cautioned that treating physicians may bring their own biases to the evaluation. *See id.* ("The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability.").

Thus, the ALJ need not blindly accept a treating physician's opinion—she may discount it if it is internally inconsistent or contradicted by other substantial medical evidence in the record. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). If an ALJ gives the treating source's medical opinion lesser weight, the ALJ must articulate "good reasons" for doing so. § 404.1527(c)(2). In such a case, "the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests

performed, and the consistency and supportability of the physician's opinion" in determining the weight to give the medical opinion. *Id.*; *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

On November 22, 2017, Dr. Bannasch opined that Gauer's impairments met the requirements of Listing 12.04 (Affective Disorders) because she had depressive syndrome characterized by anhedonia, decreased energy, difficulty concentrating or thinking, and hallucinations, delusions, or paranoid thinking as well as marked restrictions in activities of daily living and maintaining social functioning. R. 1727–28. Dr. Bannasch also opined that Gauer's impairments met the requirements of Listings 12.06 (Anxiety Disorders) and 12.08 (Personality and Impulse-Control Disorders) because Gauer had marked limitations in concentrating, persisting, or maintaining pace, adapting or managing oneself, understanding, remembering, or applying information, and interacting with others. R. 1729–31. Dr. Bannasch further opined that Gauer's impairments would preclude her work performance under the areas of understanding, sustained concentration, memory, social interaction, and adaptation for 10–15% or more of a typical work day depending on the task. R. 1732–34.

Later in the same report, Dr. Bannasch opined that, based on the totality of Gauer's physical and mental limitations, Gauer would be off task more than 30% of an 8-hour per day, 5-day workweek. R. 1734. Dr. Bannasch estimated that Gauer would be absent from work 5 days or more each month and would be unable to complete 5 or more 8-hour work days in a given month due to her impairments. *Id.* Despite finding "marked" limitations in CPP earlier in the report, Dr. Bannasch indicated that Gauer had "extreme" limitations in CPP on a later page. R. 1730, 1735. Dr. Bannasch indicated that Gauer had an anxiety-related disorder and "complete inability to function independently outside the area of one's home." R. 1736. Dr. Bannasch also indicated that

6

neither substance abuse nor alcohol contributed to Gauer's limitations. R. 1737. Dr. Bannasch noted that his opinions throughout the report were based on office notes and Gauer's history, medical file, and progress, but not on laboratory reports and other tests. R. 1735.

The ALJ articulated good reasons for giving Dr. Bannasch's opinion little weight. The ALJ acknowledged that Dr. Bannasch is a "highly trained mental health provider who personally observed and examined [Gauer]" but also noted that Dr. Bannasch treated and examined Gauer for "just a few months prior to rendering his opinion." R. 666. These comments demonstrate a weighing of the treatment relationship factors in § 404.1527(c)(2). As for supportability, the ALJ noted that Dr. Bannasch failed "to attach any treatment notes or support his assertions with objective mental status examination findings," thereby reducing the opinion's weight. *Id.* The ALJ correctly recognized that, under the SSA's regulations, "[t]he more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion." § 404.1527(c)(3). That Dr. Bannasch did not, by his own admission, rely on "laboratory reports & other tests" in forming his opinions, R. 1735, certainly makes his report less supportable. *See* § 404.1502(c). The ALJ was correct in that respect.

Arguably, the ALJ was wrong to assume that medical signs did not support the report, as the Seventh Circuit has held that "[a] psychiatrist does not merely transcribe a patient's subjective statements . . . but assesses those complaints through the objective lens of her professional expertise." *Mischler v. Berryhill*, 766 F. App'x 369, 375 (7th Cir. 2019); *see also Adaire v. Colvin*, 778 F.3d 685, 688 (7th Cir. 2015) (criticizing an ALJ's adverse weighing of a claimant's self-report of having panic attacks where "[h]e said he did [and] the psychologist and the therapist believed him"). As this court has previously observed, "in the mental health realm, the distinction between

symptoms and signs breaks down." *Brott v. Berryhill*, No. 18-C-255, 2019 WL 1435930, at *5 (E.D. Wis. Mar. 29, 2019); *see also* Ansar M. Haroun, M.D., & Grant H. Morris, *Weaving a Tangled Web: The Deceptions of Psychiatrists*, 10 J. Contemp. Legal Issues 227, 237 (1999) ("[M]any diagnoses [of mental disorder] either cannot be validated by objective testing or are so difficult to validate that routine clinical practice relies solely on self report."). Dr. Bannasch's report is therefore not entirely lacking in objective support, as Gauer's self-reported symptoms, when filtered and interpreted through Dr. Bannasch's professional expertise, can serve as medical signs lending his opinion support. But unless the decision of whether a claimant is disabled is to be reduced to what a claimant with a pending application for benefits tells her psychologist, a treating physician's opinion based solely on such evidence cannot be considered controlling. This is especially true where, as here, the ALJ gave many other reasons for discounting Dr. Bannasch's opinion that Gauer was incapable of performing any job on a sustained basis.

In addition to his failure to attach treatment notes showing objective mental status examination findings to support his assertions, the ALJ noted that Dr. Bannasch's severe limitations were not consistent with his own treatment records and the overall record. The ALJ reasonably observed that were Gauer as limited as Dr. Bannasch suggests, she would not be able to perform her 30-hour per week position at Arby's for the past year. R. 666. The ALJ noted that Dr. Bannasch's conclusion that Gauer has a marked limitation in social functioning is inconsistent with other evidence in the record showing Gauer having multiple boyfriends, sexual partners, and friends; attending parties; using social media; going to music festivals, bars (multiple times weekly), the gym, and concerts; as well as appearing pleasant and cooperative. *Id.* Likewise, the ALJ found Dr. Bannasch's assertion that Gauer has extreme limitation in CPP incongruent with Gauer appearing

8

with intact concentration, attention, cognition, and a fund of knowledge during objective mental health status examinations, including those with Dr. Bannasch. R. 667. The ALJ observed Gauer working at various part-time jobs, obtaining a driver's license, using a smartphone, completing chores, handling a savings account, playing recreational sports, and watching movies also cut against Dr. Bannasch's CPP opinion. *Id.*

Further, the ALJ found Dr. Bannasch's conclusion that Gauer had marked limitations in understanding, remembering, and applying information inconsistent with her ability to graduate high school, her work at numerous part-time jobs, treatment records (including Dr. Bannasch's), her low-average to average intelligence, intact memory, and the lack of deficits in fund of knowledge or cognition. *Id.* Moreover, the ALJ noted that Dr. Bannasch's conclusion that Gauer had marked limitations in adapting and managing oneself ran contrary to Gauer claiming she handles change "somewhat okay," going through multiple life changes since her alleged onset date (including different romantic relationships, losing her brother, moving residences, and changing multiple jobs), and her ability to maintain a high level of daily activity. R. 666–67, 1043. Lastly, the ALJ noted Dr. Bannasch's failure to support his conclusions as to Gauer's need for absences, her inability to complete work days, and off task behaviors, which are inconsistent with Gauer's year-long work at Arby's (and her statement "I haven't missed work [at Arby's]" during the January 3, 2018 hearing), her daily activities, and objective mental status evaluation findings. R. 666–67, 697. This discussion on the consistency of Dr. Bannasch's report with the other evidence in the record was a thorough if not exhaustive weighing of the consistency factor in § 404.1527(c)(4).

The ALJ's analysis was more than sufficient to justify giving Dr. Bannasch's opinion little weight. The ALJ examined the whole record, applied the correct SSA regulations, and weighed each

of the regulatory factors carefully. Gauer contends that the ALJ needed to more explicitly consider in the first instance whether Dr. Bannasch's opinion was well-supported by medically acceptable clinical and laboratory diagnostic techniques and was not consistent with other substantial evidence in the case record, as stated in § 404.1527(c)(2). But the ALJ's analysis was replete with evidence in the record that was inconsistent with Dr. Bannasch's report. That is sufficient. Gauer's criticism privileges form over substance and would not change the outcome of the ALJ's analysis. *See Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) ("[W]e will not remand a case for further specification when we are convinced that the ALJ will reach the same result.").

Gauer next challenges the ALJ's decision to give little weight to the report of her counselor, Sarah Binder. Like Dr. Bannasch, Binder opined that Gauer's impairments met Listings 12.04 (Affective Disorders), 12.06 (Anxiety Disorders), and 12.08 (Personality and Impulse-Control Disorders). R. 1752–55. The ALJ properly determined that Binder is not considered an "acceptable medical source" under the regulations. 20 C.F.R. § 404.1502(a); R. 667. The SSA has noted that "[a]lthough the factors in 20 C.F.R. 404.1527(d) . . . explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources,' these same factors can be applied to opinion evidence from 'other sources.'" SSR 06-03p. "Not every factor for weighing opinion evidence will apply in every case." *Id.* Gauer claims that the ALJ's analysis is deficient.

The court disagrees. The ALJ noted that Binder is a counselor who has treated Gauer since 2012 and failed to attach treatment notes or support her assertions with objective mental status examination findings. R. 667. These comments demonstrate consideration of the treatment relationship and supportability factors. The ALJ then noted, considering the consistency factor, that Binder's conclusions about Gauer's limitations, need for work absences, and off-task behavior were

10

given little weight for the same reasons that Dr. Bannasch's opinion was given little weight, including that Binder's conclusions are speculative and inconsistent with Gauer's work at Arby's, documented activities of daily living, and objective mental status evaluation findings. *Id.* This discussion, which weighed the applicable regulatory factors, *see* SSR 06-03p, is more than sufficient to justify giving Binder's opinion little weight.

As a final issue for review, Gauer contends that the ALJ's decision was not based on substantial evidence because the ALJ failed to adequately account for Gauer's moderate limitations in CPP in the RFC assessment and hypothetical question to the VE. A claimant's RFC specifies the most that a claimant can do despite the limitations caused by her physical and mental impairments. 20 C.F.R. § 404.1545(a)(1). The ALJ assesses a claimant's RFC "based on all the relevant evidence" in the record, including severe and non-severe impairments as well as medical and non-medical evidence. § 404.1545(a), (e). The ALJ's hypothetical question to the VE must incorporate all of the limitations included in the RFC. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010).

Gauer argues that, despite giving substantial weight to the opinion of state agency psychologist Dr. Karla Delcour, the ALJ failed to incorporate Dr. Delcour's findings as to Gauer's limitations in CPP into the hypothetical posed to the VE. Dr. Delcour completed a mental RFC assessment of Gauer covering the period of February 2015 to April 2017. R. 753–59. Dr. Delcour's narrative discussion of Gauer's CPP limitations, which recorded "the actual [RFC] assessment," states that Gauer "likely has moderate limitations in terms of detailed instruction, working near others, maintaining pace, and maintaining concentration as evidenced by her need for repetition and reminders, intermittent distractibility, variable mood, and poor interpersonal skills." R. 757–58. In

the "Additional Explanation" section of the mental RFC assessment, Dr. Delcour states that Gauer "is capable of routine, unskilled work which preferable [sic] has minimal interaction w[ith] the general public." R. 759.

The ALJ properly accounted for and incorporated Gauer's moderate limitations in CPP into the RFC and hypothetical question. The ALJ accounted for Gauer's limitation in carrying out detailed instructions by limiting Gauer to understanding, remembering, and carrying out simple instructions in an environment involving only occasional work-related decisions and occasional changes in the work setting. R. 661, 665, 757–58. The ALJ noted that this limitation is consistent with Gauer's part-time and seasonal work, intact attention, cognition, fund of knowledge, and concentration at numerous examinations, as well as her statement that she handles change "somewhat okay." R. 665. Further, the ALJ noted that Dr. Delcour's claim that Gauer has minimal interaction with the public, aside from being "preferable" rather than required, R. 759, is inconsistent with Gauer's work at Arby's and with the other aforementioned evidence. R. 665. The ALJ therefore limited Gauer to work with no more than occasional interaction with supervisors, coworkers, and the public, with no requirement of performing tandem tasks with coworkers. *Id.* The ALJ also found Dr. Delcour's statement regarding Gauer's limitations with sustained concentration inconsistent with Gauer's ability to maintain near full-time work at Arby's and intact concentration and memory during objective examinations. *Id.* To address Gauer's limitation in maintaining pace, the ALJ limited her to work at a consistent pace through the workday, but not at a production rate pace where each task must be completed within a strict deadline. R. 665, 668. This assessment is sufficient, as it considered all limitations supported by evidence in the record.

*See Jozefyk v. Berryhill*, 923 F.3d 492, 497 (7th Cir. 2019) (citing *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014)).

The ALJ's hypothetical to the VE is also sufficient, as the ALJ adequately accounted for Gauer's moderate limitations in CPP. *See Dudley v. Berryhill*, 773 F. App'x 838, 841–42 (7th Cir. 2019). The Seventh Circuit has noted that while "the most effective way" to inform the VE fully of a claimant's limitations is to include the limitations directly in the hypothetical, alternative phrasing that adequately accounts for such limitations is acceptable. *See id.* at 842; *O'Connor*, 627 F.3d at 619. The ALJ's phrasing here sufficiently captures Gauer's limitations. To adopt Gauer's approach and include in the hypothetical question difficulties that the ALJ reasonably concluded did not limit the claimant's ability to work would conflate the independent roles of the ALJ and VE. The VE's testimony is "evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, *given* [*the claimant's*] *residual functional capacity* and vocational factors." 20 C.F.R. § 404.1560(c)(2) (emphasis added). It is the job of the ALJ, not the VE, to determine the RFC. *See* § 404.1546(c). But to bypass the ALJ's conclusions in formulating the RFC and to present the claimant's difficulties directly to the VE would usurp the ALJ's function and risk that the VE's testimony would be under or over inclusive.

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this  23rd  day of September, 2019.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court